Okay, we're hearing the case of Dickerson v. Arcadian, and Appellant, you may proceed. Thank you, Your Honor. Well, may it please the Court, I'm Karen Calzer. I'm representing Mr. Dickerson today. I'd like to reserve two minutes for rebuttal. I always like going last on these so that I can hear everybody else. It's always very interesting. Do you like to speak up, Ms. Calzer? That's good enough. How about that? Does that work? All right. Well, this is a case that the question is whether it was properly dismissed under a form of nonconvenience. Is that too loud? You're fine. Okay, cool. From the District Court. Originally, the case was filed in Washington State Court, removed for diversity jurisdiction, then a motion to transfer by the appellee, which was granted. So the underlying facts or the underlying gravamen of the case is that we have an African-American resident of the state of Washington. My problem with your briefing is that I don't quite understand what your case is. The case in chief? Let me tell you what I see as two possibilities. One, that you're suing on the services agreement that was improperly terminated because it was terminated because of race and that you're entitled to damages based on the provisions of the service agreement. Case two, as I understand you're making, is that forget about that service agreement. Nobody ever paid any attention to that. This man worked as an employee, worked many hours, they sent him all over the place, and he ought to get paid something. Sort of quantum merit, right? So which is it? I'm quite used to having practiced trial law for a while, inconsistent pleading. But it seems to me that you're pleading two inconsistent cases. One, he's an independent contractor under the services agreement. Two, forget about that, Judge. He's actually an employee and he ought to get paid minimum wages at least or quantum merit. Which is it? I consider both. They're alternative grounds, okay? Alternative grounds because it depends on what the ultimate determination as to his employment status is. It is your position that the second case was properly pleaded, not subject to the forum non-convenience analysis because there was no forum selection to a non-contract employee. Correct. So that was never determined by the court below. That's right. The court below never actually addressed the classification issue. Let's get to the more obvious one, which is the services agreement and you're an independent contractor. All right. Why don't you tell us what's wrong with dismissal under forum non-convenience under the service agreement? Well, I think the problem under the service agreement is we still have to look at the public policy of Washington, and I don't think that was properly considered by the court. The court immediately went to he's an independent contractor. There's no protection for independent contractors in the state of Washington, therefore there's no public policy that protects his work here, and that's incorrect. And the court cited DeWalter, right? Well, I cited other cases that said there is protection. Did you read DeWalter? I've read DeWalter and I've read other cases. Does DeWalter actually hold that independent contractors are not protected by race discrimination law in Washington? No. The Washington law holds that independent contractors are, and there's the citation to that. No, just the opposite. It actually said that independent contractors were covered by the race discrimination. Yes, I agree. So DeWalter was improperly and incorrectly read, cited, and relied upon, correct? Is that your point? That is my point. I'm sorry if we were miscommunicating. Yes, no, that is my point, is that independent contractors are, in fact. So to just skip. Do you have anything else to say? I think the public, you know, I don't know because it just opens up questions. Sure. So I think the public policy is the question is open and was not properly addressed or fully or thoroughly or even accurately addressed. That was an error in the court's address in saying that they're not even covered. Well, they are covered, and I think you need to address that before you decide the public policy. And if they are covered, what should happen? If they are covered, this is a person who resides in Washington is entitled to the protections of the state of Washington. That should be a consideration as to whether to enforce the forum selection clause. That needs to be taken into consideration. What I'd like us to do is to reverse or at least vacate and remand and say, consider Washington law in choosing whether to enforce the forum selection clause or not. Correct? Judge Baio, you are brilliant. Yes, that is correct. Thank you very much. Do you want to talk about anything else? I do. I think that there is an overreaching aspect of this as well. Before we get to the overreaching aspect, I'd like to circle back to Judge Baio's original question about requesting more clarity as to the underlying claims. So you have your alternate breach of the services agreement as a independent contractor claim and the misclassification, he should have been paid wages and not as a contractor claim. Correct. Where does the race discrimination come into it? Are you alleging or did you allege down at the trial level that the race discrimination motivated the misclassification or the breach of the services agreement or both? What we alleged was both. At the state level under RCW 49, I can't think of the statute, but under the discrimination statute, Washington law against discrimination, that would include him as a contractor. We also argued and asserted in the claim that he was a resident of Seattle and was an employee in Seattle and thus would be covered under Seattle Municipal Codes against race discrimination. Now, what were the acts of discrimination? The acts of discrimination were simply choosing not to pay him under any circumstance. And what is the basis for that? That's actually never been addressed. Why is it okay? Well, that's not really what the question is, at least at the moment. My question, listening to this, is why couldn't a Missouri court hear these arguments and give you relief if you're entitled to it? And I'll tell you why. Because, first of all, there's a statute of limitations issues that we addressed it, so you would be, in effect, denying him his cause of action. Well, but that's not your problem. Right. I mean, the issue to me is that you can assert that Washington has a certain public policy and something, but the question is not just that. The question is whether that policy would be able to be vindicated in another forum, and you have the burden of demonstrating that. And so I hear the argument is he performed work and he wasn't paid for it. That sounds like the kind of claim that would be cognizable under the laws of a lot of states. Well, he is an employee, and if he's an employee under the state of Washington, why would it be sent to another state when arms were a pioneer? Well, because he signed a contract with the Forum Selection Clause. Okay. Well, that is a different argument. That is under the argument of whether he's an independent contractor and if he provided services. Our alternative argument, and I think it's the accurate one, is that as this relationship progressed, he became an employee. All those things that he did, he's now an associate director, he's part of the team, it's being published, he's given authority to bind the company, he's got his own e-mail, he's traveling on behalf of the company, he's not working from time to time, like it says in the contract, he's working 35 to 40 hours a week. So in that sense, Washington has the interest in determining whether he's an employee or not, and his claim does not arise or is related to the independent contractor status in the agreement. So those are two different arguments. Right, but the issue here is not, this isn't like a transfer analysis where we're asking where the balance of the case occurred. We're asking here that he signed a Forum Selection Clause. Atlantic Marine tells us that's a presumptively valid clause. We're going to enforce that unless there's a public policy, a strong public policy of the state of Washington that says we shouldn't do that. And it's clear Washington has some public policies in favor of employees, and the question I have is why couldn't these interests be vindicated in the courts of Missouri? So I hear what you're saying about the Forum Selection Clause as to the independent contractor argument. I disagree with it, but I see what you're saying. I don't see how the independent contract, the Forum Selection Clause, would apply to his classification as an employee here in the state of Washington. This theory is you're just completely outside the agreement altogether. Completely outside the agreement. Right, but, I mean, if we disagree with that and we say, no, essentially all of these things are still subject to the Forum Selection Clause, you can't just, there have to be more allegations than there are here to get out from under the binding terms of the agreement, then why is this not a claim that Missouri could entertain? Well, I would still have a problem with the fact that the court did not address the employment issue at all, but just assumed. If you say the problem is what the court didn't address, then what you're arguing is whether Missouri provides an alternate forum or not, that's something that the trial court needed to have considered in determining whether there was a forum nonconvenience exception or forum nonconvenience reason to not enforce the Forum Selection Clause. Yes, correct, and didn't address those factual issues at all, but just went straight in one sentence, well, he's an independent contractor, therefore the Forum Selection Clause prevails and we need to go there, and I think that that is a flaw in the court's reasoning that needs to be corrected and needs to be revoked. I think in the briefing I noticed that your client was offered a settlement, $50,000. That was, I guess, declined. What is the amount of money you believe your client is entitled to here? I don't know. That's not in the record, and I can't tell you I've done the analysis at this point that I could present to you, and I don't think it would be appropriate. The reason, and I believe it's in the record, why he rejected that offer was that it was illusory, that is that it was only going to be provided if he signed a release wherein he ultimately provided all authority to Arcadia to decide if they would ultimately pay that amount or not. Have there been any efforts to mediate the case? There have not. Because I look at this, and one of two things is going to happen. The case is not over, right, no matter who wins this appeal. Either it's going to Missouri or it's going back to the district court, which just means more litigation and more expense. You know, I am in agreement with that, that mediation is an appropriate approach. Do you want to save the balance of your time? Yeah, I agree. I think mediation is an appropriate approach, and I don't know that it's appropriate for me to say anything else on that. No, that's helpful. Thank you. Good morning. May it please the Court, Doug King for respondents, or sorry, appellees to Arcadian Infracom and Daniel Davis. The standard of review in this case is, of course, abusive discretion. And abusive discretion has two angles to it or two elements to it. One is if the court below chose the wrong law, right? The other is whether there are any facts which can be derived from the record to show clear error. Why didn't the court below choose the wrong law when it's cited to water for the proposition that the race discrimination statutes in Washington did not cover independent contractors when the text of the water says contrary? Because, Judge, you get to the same result under other cases that we cited to the district court, including Judge Zilley's able opinion in the BAGA and E-Plus technology case. There's also Currier, which is a court of appeals case, which was cited in the complaint of the plaintiffs, and the Marquis case, which is also cited in DeWater as establishing that independent contractors are covered by the Washington state race discrimination statute, correct? Yes, I've always assumed that the independent contractors would be covered under Washington law or Missouri law. Well, that sure wasn't assumed by the district court. Well, but the issue— I mean, that was the whole basis of a ruling. Oh, I don't think that's the whole basis of the ruling, Your Honor. It's a substantial material basis of the ruling, correct? It is something certainly that the judge included in the opinion, but the judge can get to the same result under other cases that we cited to the district court and to this court because the question under Atlantic Marine is whether there is a public policy of the state that requires deciding the case there as opposed to transferring it, and there is no such public policy under any case in Washington state. They cite statutes saying, well, employees should be paid, independent contractors should be paid, people should not be subject to discrimination. So that public policy, WLAD, which is the Washington Law Against Discrimination, the preamble language to that state or case law states that there's a strong public policy and that this is a policy that cannot be waived by contract between the private entities, is that correct? There's case law to that effect? Yes, that's correct. There is a public policy on the merits of the case. Oh, if you'll let me finish my question. Oh, sorry. It was a three-part question. And then there is the Washington State Acharya case that states that if you have a situation where this Washington resident is about and you enforce a forum selection clause against them, in that case, to Switzerland, and that would effectively take away the claims that they would have, the WLAD claims that they would have under Washington law, that that was a violation of Washington public policy against employment discrimination, correct? There is that case. I don't think that Washington state case applies in this federal proceeding. All right. I'm sorry. Oh, yes. And so tell me why. Well, because under Atlantic Marine, it's an issue of federal law, what you do with a forum selection clause, how you interpret it, how you apply it, what the implications of that. But under federal law, one of the factors is a violation of a state public policy. Correct. And who is the best arbiter of what a state public policy is? Isn't it the state courts? Well, no. It's actually the state legislature in the first instance in the statutes that they've cited. That's what they rely on is public policy. But in the second instance, it would be the state courts. But you have to make a distinction between procedural and substantive issues. And on the procedural issues, it's federal law that applies here. There are a lot of cases cited in the appellant's brief, Washington state cases, about how Washington state does or doesn't treat forum selection clauses. But those don't apply for the most part. It's a question of federal law. What do we do with this clause if, as the Supreme Court said in Atlantic Marine, there is a valid forum selection clause in the contract? So this is where Judge Baez started at the outset, which is, so there's one claim under the independent contractor, the services agreement. And then there's one claim that's a misclassification agreement. Sorry, one claim that is based on misclassification. How did the trial level court do any analysis as to whether the misclassification claim was related to the services agreement such that it should even be subject to the forum selection clause to begin with? Well, first of all, you can't say it's two different cases, right? They filed actually not two, but eight counts. And roughly half of them are counts under the contract or likely related to the contract or quasi-contract claims that you can't adjudicate without deciding what the contract is. And the other half are statutory or municipal violations. But they sued on all of them. They sued for breach of contract. They sued for breach of contract, including a contract in which there's a forum selection clause in which this plaintiff agreed that those cases would be heard only in St. Louis. So the court was certainly correct to come to the conclusion that the case ought to be transferred. So I don't think the plaintiff gets to pick and choose and say, well, only look at some of the counts that we pleaded and don't, you know, ignore the fact that we sued for breach of this very contract. If that were the only claim, I'm sorry, if it doesn't really matter. It's not counting up how many claims are under the contract and how many are not. If you have a claim for breach of contract or claims that relate to the contract, which a whole bunch of them do under the Sun versus Advanced China Health Systems case from this court, if it requires, if it has some logical connection to the contract or logical or causal connection, I think, to the contract, that's relating to the contract. And all of the claims here have some logical or causal connection to the contract because you can't, no court, whether here or in Missouri, could determine these extra contractual claims without also determining, well, what was at stake in the contract? What is the plaintiff entitled to under the contract? Can I ask you something that you kind of started at the top of your presentation, which was that what happens if this case goes to Missouri? He has two types of claims here, as I see it. One, I should be paid more, and two, I was discriminated on the basis of race. Right. Can he vindicate those claims in a Missouri court? Well, that will depend on the facts and what they're able to prove, but there's nothing that precludes that. I mean, I think that the plaintiff's argument is sort of a non sequitur. They say, well, look at the Missouri Human Rights Act, and that requires, you know, certain preliminary filings, which they haven't done. Well, so what? They haven't brought a claim under the Missouri Human Rights Act. There's no reason why this plaintiff can't bring the claims under Washington state law that they're trying to assert in a court in Missouri. Would you agree to the application of Washington state law in Missouri? Well, I would agree if it's appropriate. I mean, it's a traditional conflicts of law issue, isn't it? But regardless of whether you would agree or not, doesn't the forum selection clause itself state that the choice of law would be Missouri? Yes. The agreement shall be governed by the laws of Missouri. Now, if you have statutory causes of action, whether they're federal or state, you know, Washington state, some other state, Missouri state, or, you know, you have a federal cause of action, a choice of law clause in the contract that says, well, this contract will be governed by Missouri law, it doesn't affect that. So I don't think the choice of law clause and the forum selection clause are in the same paragraph, but they have different purposes and they do different things. Is it your position that the service agreement, forum selection clause, governs the causes of action such as unjust enrichment, quantum merit, and wages due under Washington law? Yes, absolutely. As I understood it, this is an alternate ground of claim saying apart from the service agreement, this man was an employee and should be paid wages. That's the point. There was no motion of summary judgment which knocked out everything except the service agreement, right? Right. We haven't sought any ruling on the merits. So why would the service agreement provision govern the non-service agreement claims? Because this court's decision in Sun v. Advanced China Health System says so. It says that if you have a contract with a forum selection clause in it and it's a broad forum selection clause where it covers anything relating to the contract, not just claims brought under the contract, then any claim brought under the contract or brought outside of the contract that has a logical or causal connection to the contract is covered by that clause. And quantum merit, for example, you can't, no court here or there or in any jurisdiction could determine whether any quantum merit relief is appropriate without interpreting the contract, determining in the first instance what relief is the plaintiff entitled to, if any, under the contract. And then is he entitled to something more? You're right about that. I mean, that's what Sun says. What I'm curious about, Sun also referenced, at oral argument in Sun, that the defendant acknowledged that the claims that were being brought could be brought in the forum that's specified in the clause, right? In that case, it was California, I believe, and Sun recounts how at oral argument the defendant acknowledged that these claims were cognizable. They could be entertained by a court in the forum state where the forum selection clause designates. And do you agree with that here? I mean, these aren't particularly avant-garde claims or race discrimination and loss of wages. Right. Those claims are adjudicated all the time in Missouri State courts. And if the judge there determines that under traditional choice of law principles that Washington law should apply to those, then that's what the court would do. And there's nothing that prohibits those claims from going forward if and when the plaintiff chooses to file in St. Louis, where he should have filed in the first place. There's a lot of rhetoric in the reply brief in this case about how we're precluding them from having any claim and we're trying to foreclose this. This isn't a decision on the merits. This is just a decision about where the case is heard. They can refile or not refile. They can file in the state court in St. Louis. They can plead the same claims. They can plead different claims. They can plead whatever they believe is appropriate. Can I ask you, there was a $50,000 settlement offer that was then not accepted? In May of 2020, that is correct. That's while his first year of work under the contract was still in progress. Do you believe the case would benefit from mediation? It could, certainly. But as I was saying a while ago, you know, the standard is abuse of discretion. It's not whether respectfully, whether any of the three judges on this panel or I would have come to any different conclusion. It's whether Judge Fricke came to a reasonable conclusion or whether it was arbitrary and capricious. And I think under Atlantic Marine. It's not reasonable if it's erroneous on the law. If it's erroneous on the law in a way that makes a difference. But it doesn't make a difference here. Because there isn't a Washington State public policy that requires deciding these cases in the state of Washington. This court dealt with a similar issue in the Dupuy versus Dupuy census. But there is a Washington State policy that those claims not be forfeited. Isn't that right? But that was the Achiraya case. Well, certainly. I mean, every state that enacts a statute is in effect adopting a public policy that. . . But that was explicitly held at Achiraya. Right. But the plaintiff cites the statutory, sort of preliminary statutory sections on we think it's important for people to get paid. We think it's important for people to work in sanitary conditions. We think those are the public policies that the plaintiff is relying on. What's remarkably absent from those public policies is anything that says, we think these. . . This is the state of Washington legislature speaking. We think that these claims have to be heard only in the state of Washington. There is nothing like that in the Washington statutes or in the Washington case law. So under Atlantic Marine. . . Is there anything in Missouri that prevents Missouri from applying Washington law? No. I think I have one second left.  Thank you, Your Honor. Okay. Thank you, sir. Why don't you address that last point? Why can't you apply all these Washington laws under Missouri Conflict of Law, Choice of Law rules? Well, first of all, I'm not a Missouri lawyer, so I'm a little bit hampered in arguing Missouri law. But shouldn't you investigate that before you come here to argue it? And if it's appropriate for me to say so. . . Bring an African American. . . Bring a race discrimination case in Missouri. Where is the Washington policy that says that Washington race discrimination claims must be tried in the state of Washington? There is not a statement that says they must be tried in the state of Washington. However, there is a need to vindicate Washington policy in Washington. Why can't Missouri do that? Because they do not have the experience. They do not have the law. How do you know that? Because we, as stated in our policy statutes and in case law, we, the state of Washington, is a pioneer in the area of wage and discrimination. It's your burden under Atlantic Marine, right? This is a contract that your client signed. Son says that you can't essentially plead around that contract. This is all related to his employment. It's governed by the Forum Selection Clause. And so my view is that you would have to come forward with some actual basis to say that Missouri couldn't entertain and vindicate these rights. And I'm not hearing a sound basis for that. Well, you're saying that there has to be a procedural statement of policy, a statement of procedural policy, and not just a substantive statement of policy. Is that accurate? What I'm saying is that it's clear that Washington has some strong policies. What's less clear is whether those interests couldn't be vindicated in the courts of another state here in Missouri. Why would they be vindicated in Missouri if they are not arising from the contract? So I disagree, and I do not believe that. Well, we do that all the time, at least in California. We choose a law from other states and apply it in California contracts and California torts. So I think if that's the concern, if that's the concern, that the independent contract services agreement. But I don't know that you have anything in the record nor any argument that Missouri is incapable of applying Washington law. What I think would be the appropriate result then would be— It's appropriate to wear a white suit at a garden party. That's a subjective question. Now, you tell me the law in Missouri that prohibits Missouri from applying Washington law. I can't. I'm not sufficiently versed, and I won't represent that I am. However, I think that problem is better resolved by giving leave to amend, if that's the concern. It's better for you, yes. Well, I think it's better for vindication of these policies that are relevant. This is a man who worked for 10 months and didn't get paid, right? And that's not even at issue. So that's—if you have any further questions. I think not. Thank you so much for your argument this morning. I want to thank both counsel for the briefing and argument. This matter is submitted. I want to thank the staff here at the Nakamura Courthouse for the kind hospitality during our week here. This adjourns our court for today, and we are concluded. All rise. This court for this hearing stands adjourned.
judges: BEA, BRESS, Ohta